DAVID P. HUBBARD, ESQ./Cal. Bar No. 148660
GATZKE, DILLON & BALLANCE, LLP
1525 Faraday Avenue, Suite 150
Carlsbad, California 92008
(760) 431-9501 / FAX: (760) 431-9512

Attorneys for Plaintiffs American Sand Association, San Diego Off-Road Coalition, Off-Road Business Association, American Motorcycle Association District 37

FILED

08 JUN 10 PM 1:58

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: DEPUTY

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMERICAN SAND ASSOCIATION, a non-profit corporation; OFF-ROAD BUSINESS ASSOCIATION, a non-profit corporation; and SAN DIEGO OFF-ROAD COALITION, a non-profit corporation, AMERICAN MOTORCYCLE ASSOCIATION DISTRICT 37, a non-profit corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES FISH AND WILDLIFE SERVICE; DIRK KEMPTHORNE, SECRETARY OF THE INTERIOR; UNITED STATES DEPARTMENT OF THE INTERIOR<br><br>Defendants. | CASE NO. '08 CV 1034 H JMA<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF TO CURE VIOLATIONS OF THE FEDERAL ENDANGERED SPECIES ACT**<br><br>**[16 U.S.C. §1533(b)(3); 16 U.S.C. §1540(g)]** |

## I. INTRODUCTION

1. This is an action for declaratory and injunctive relief against the United States Fish and Wildlife Service ("USFWS"), the Department of the Interior ("DOI"), and Dirk Kempthorne, Secretary of the Interior (collectively, the "defendants"), for their failure to comply with Section 4(b) of the Federal Endangered Species Act ("ESA"), which mandates that defendants respond within 12 months to any petition filed to remove an insect, plant or animal for the federal list of threatened and endangered species. 16 USC §1533(b).



CR

2. Specifically, on June 30, 2005, the plaintiffs, American Sand Association, the San Diego Off-Road Coalition, the Off-Road Business Association, and the American Motorcycle Association District 37 (collectively, "plaintiffs") submitted to defendants a Petition to Remove the Peirson's Milk-vetch from the Federal List of Threatened and Endangered Species (the "Delisting Petition"). However, defendants have failed to issue a decision on the Delisting Petition within the time frame prescribed in the ESA — *i.e.*, 12 months from the date the petition was submitted. Indeed, the defendants' decision on the Delisting Petition, even after extensions granted by the plaintiffs, is now more than 20 months overdue.

3. Plaintiffs bring this action pursuant to the "citizen suit" provision of ESA Section 11(g)(1)(C), which provides that any person may commence a civil suit against the Secretary "where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary."

4. Through this action, plaintiffs seek a Court Order directing defendants to make the findings required under ESA Section 4(b)(3) with respect to the Delisting Petition. Plaintiffs also seek to recover all reasonable attorneys fees and costs incurred in this action, as provided under Section 11(g)(4) of the ESA. 16 USC §1540(g)(4).

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 16 USC §1540(g)(1), which permits citizens to bring suit against the Secretary for his failure to discharge non-discretionary duties under ESA Section 4. In addition, Section 4 itself provides that any negative finding by the Secretary regarding a delisting petition is subject to judicial review. 16 USC §1533(b)(3)(C)(ii). The Court also has jurisdiction over this matter pursuant to 28 USC §1331 (federal question), 2201 (declaratory relief), and 2202 (injunctive relief), 5 USC §553(e) (petitions for review), and 5 USC §702 (judicial review of agency action).

6. Plaintiffs have exhausted their administrative remedies and have complied with 16 USC §1540(g)(2)(C) by submitting to defendants a written notice of (1) the violations alleged in this complaint and (2) plaintiffs' intent to sue if such violations were not corrected (the "60-Day

Notice"). The 60-Day Notice, which is attached to this Complaint as Exhibit A, was submitted to defendants on April 8, 2008, *via* overnight mail – 62 days prior to the filing of this complaint.

7. Venue is properly vested in this Court pursuant to 16 USC §1540(g)(3)(A), in that the Peirson's Milk-vetch, which is the subject of plaintiffs' Delisting Petition, resides in the Imperial Sand Dunes of the California Desert, located in Imperial County, California, which lies within this district. Further, venue is also proper under 28 USC §1391(e) because: (1) at least one of the plaintiffs is based in the district; (2) many of the plaintiffs' members reside in this district; and (3) the Imperial Sand Dunes are located in this district.

## III. PARTIES

8. Plaintiff American Sand Association ("ASA") is a California non-profit corporation based in Temecula, California. ASA's 15,000 members routinely travel to the Imperial Sand Dunes Recreation Area ("ISDRA") for purposes of camping and recreating with off-highway vehicles ("OHVs"). On November 3, 2000, the Department of Interior, through its subagency, the Bureau of Land Management ("BLM"), closed 49,300 acres of the ISDRA to motor vehicles for the alleged purpose of protecting the Peirson's Milk-vetch ("PMV"), a desert plant placed on the ESA list of "threatened" species in 1998. As a result, ASA members can no longer use motor vehicles to access or recreate in this large portion of the ISDRA. ASA and its members contend that the original decision to list the PMV as a "threatened" species was made in error and without sufficient scientific data, and has led to the unnecessary loss of recreational opportunities in the ISDRA. As indicated above, ASA was one of five entities that submitted the Delisting Petition to USFWS and the Secretary.

9. Plaintiff San Diego Off-Road Coalition ("SDORC") is a non-profit corporation whose members routinely visit the ISDRA to camp, use their OHVs, and generally enjoy the aesthetics provided by the unique landscape of the dunes. The members of SDORC have been denied vehicle access to those portions of the ISDRA, which were closed in November 2000 for the purported benefit of the PMV, the plant species that is the subject of the Delisting Petition. SDORC was among the entities that submitted the Delisting Petition to USFWS and the Secretary.

10. Plaintiff Off-Road Business Association ("ORBA") is a trade organization based in Santee, California. The members of ORBA own and manage companies that derive a substantial part of their income from the off-road recreation industry. ORBA members generate more than $250 million for the California economy and have significant concerns regarding the loss of OHV access to key recreational areas of the California desert. ORBA members provide goods and services to individuals and families that participate in OHV recreation in these areas, including the Imperial Sand Dunes. ORBA members also use their own OHVs in the designated "open" areas of the dune system. Like the members of ASA and SDORC, the members of ORBA have been adversely affected by the dune closures implemented for the purported benefit of the PMV. ORBA joined ASA and SDORC in submitting the Delisting Petition to USFWS and the Secretary.

11. Plaintiff American Motorcyclists Association District 37 ("AMA-D37") is a non-profit corporation with hundreds of members in Southern California. Many of those members visit the ISDRA to ride motorcycles and engage in other forms of motorized and non-motorized recreation. AMA-D37 members have been adversely affected by the dune closures resulting from the USFWS's decision to list the PMV as threatened — a decision that AMA-D37 thinks was in error. AMA-D37 is among those parties that submitted the Delisting Petition to USFWS and the Department of Interior.

12. Defendant USFWS is an agency of the United States Government. It is responsible for implementing the ESA. Among its many duties, the USFWS is required to evaluate petitions seeking to remove insects, plants or animals from the federal list of threatened or endangered species. See, 16 USC §1533. The purpose of this evaluation is to determine whether the petition presents "substantial scientific or commercial information indicating that the petitioned action [delisting] may be warranted." 16 USC §1533(b)(3)(A). USFWS then provides the results of its evaluation to the Secretary of the Interior (another defendant in this action), who has the statutory duty to make and publish formal findings as to whether delisting is appropriate. Put simply, USFWS provides technical support to the Secretary so that he can meet his obligations under the ESA, including the obligation to review and make findings on delisting petitions such as the one submitted by plaintiffs.

13. Defendant Dirk Kempthorne is the Secretary of the Interior (the "Secretary") and the official cabinet-level director of the Department of Interior and, by extension, of USFWS. As Secretary, he has statutory duty to enforce and comply with the various provisions of the ESA, including those relating to the listing and delisting of threatened and endangered species. Under Section 4(b)(3) of the ESA, the Secretary – with technical assistance from USFWS – must evaluate delisting petitions and determine whether they present "substantial scientific or commercial information indicating that the petitioned action [delisting] may be warranted." 16 USC §1533(b)(3)(A). Following this evaluation, the Secretary must make and publish findings as to whether the proposed delisting is appropriate. 16 USC §§1533(b)(3)(A) and 1533(b)(3)(B).

14. Defendant Department of the Interior ("DOI") is a department of the United States government, and is charged with overseeing the implementation of the ESA. The USFWS is an agency within DOI.

## IV. LEGAL BACKGROUND

**Section 4 of the Endangered Species Act**

15. Section 4 of the ESA regulates the manner in which insects, plants and animals are placed on, or removed from, the federal list of "threatened" and "endangered" species. 16 USC §1533. The responsibility for making listing and delisting decisions rests with the Secretary. *Id.*

16. When determining whether a particular species should be placed on or removed from the "threatened or endangered" list, the Secretary shall base his decision solely on "the best scientific and commercial data available to [him] after conducting a review of the status of the species . . ." 16 USC §1533(b)(1)(A).

17. Section 4 provides that any interested person may file a petition to add a species to the federal list. 16 USC §1533(b)(3)(A). Section 4 also allows an interested person to file a petition requesting that a particular species be ***deleted*** from that list. 16 USC sec. 1533(b)(3)(A). After receiving such a petition, the Secretary has 90 days in which to determine whether the request to "list" or "delist" is warranted:

> "To the maximum extent practicable, within 90 days after receiving the petition of an interested person under section 553(e) of Title 5 to add a species

> to, or remove a species from, either of the lists published under subsection (c) of this section, the Secretary ***shall*** make a finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted." *Id.* (Emphasis added.)

18. As the quoted text indicates, the Secretary's duty to make the findings required under 16 USC §1533(b)(3)(A) is non-discretionary.

19. If the Secretary finds that the petition presents insufficient evidence to support the requested action (listing or delisting), the finding is subject to judicial review. 16 USC §1533(b)(3)(C)(ii).

20. On the other hand, if the Secretary finds that the information provided in the petition is adequate to support the request to list or delist, the Secretary "shall promptly publish" that finding in the Federal Register. 16 USC §1533(b)(3)(A). Again, this is a non-discretionary duty of the Secretary.

21. Upon finding that a petition presents substantial information to support (a) listing or (b) delisting, the Secretary, within a year (12 months) of receiving the petition, must decide whether to take the action requested. During this 12-month period, the USFWS receives and reviews information relating to the listing/de-listing request. This information is intended to assist the Secretary in making his final determination on the petition under consideration.

The Secretary's obligation tomake a final decision on a petition is set forth in Section 4(b)(3)(B):

> "Within 12 months after receiving a petition that is found under subparagraph (A) to present substantial information indicating that the petitioned action may be warranted, the Secretary ***shall*** make one of the following findings:
>
> i. The petitioned action is not warranted, in which case the Secretary shall promptly publish such finding in the Federal Register.
>
> ii. The petitioned action is warranted, in which case the Secretary shall promptly publish in the Federal Register a general notice and the complete text of the proposed regulation to implement such action in accordance with paragraph (5).
>
> iii. The petition is warranted, but that –

I. the immediate proposal and timely promulgation of a final regulation implementing the petitioned action in accordance with paragraphs (5) and (6) is precluded by pending proposals to determine whether any species is an endangered species or a threatened species, and

II. expeditious progress is being made to add qualified species to either of the lists published under subsection (c) of this section and to remove from such lists species for which the protections of this chapter are no longer necessary, in which case the Secretary shall promptly publish such finding in the Federal Register, together with a description and evaluation of the reasons and data on which the finding is based."

16 USC §1533(b)(3)(B).

22. Any negative finding described in subparagraph (b)(3)(B)(i) or (iii) shall be subject to judicial review. 16 USC §1533(b)(3)(C)(ii).

**Section 11 of the Endangered Species Act**

23. Section 11(g)(1)(C) of the ESA gives citizens the right and power to bring a civil suit against the Secretary for failing to discharge his non-discretionary duties under Section 4 of the Act. 16 USC §1540(g)(1)(C). In other words, the ESA provides citizens the express right to sue the Secretary for failing to make the findings required in response to any petition to list or delist a species.

24. Section 11(g) also vests the district courts with jurisdiction to order the Secretary to perform his mandatory duties under the ESA, including those relating to petitions to list or delist a species. 16 USC §1540(g)(1). Such jurisdiction exists without regard to the amount in controversy or the citizenship of the parties. 16 USC §1540(g)(1).

25. No action may be commenced under Section 11(g)(1)(C) "prior to sixty days after written notice has been given to the Secretary . . . ." 16 USC §1540(g)(2)(C). However, once the 60-day notice period expires, any aggrieved party may bring suit in federal district court.

26. The court, in issuing a final order in any suit brought pursuant to Section 11(g)(1), "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines that such award is appropriate." 16 USC §1540(g)(4).

## V. FACTUAL BACKGROUND

**The Peirson's Milk-Vetch**

27. The Peirson's Milk-Vetch (*Astragalus magdalenae* var. *personii*) ("PMV") is stout, short-lived perennial plant reaching 20 to 70 cm (8 to 20 inches) high. It occurs on slopes and hollows of windblown dunes in the Sonoran Desert, which includes the Imperial Sand Dunes of southeastern California (also known as the Algodones Dunes).

28. In the Imperial Sand Dunes, the PMV shares vast tracts of land with OHV recreationists. However, some of the densest PMV colonies in the Imperial Sand Dunes are found in the designated Wilderness Area north of State Highway 78 ("SR-78"), where motor vehicles are prohibited. As to the *open* dunes areas, OHV travel patterns rarely intrude into PMV colonies. The Bureau of Land Management, a subagency of defendant DOI, acknowledged this fact in a November 2000 report entitled, *Monitoring of Special Status Plants in the Algodones Dunes, Imperial County, California* (the "November 2000 BLM Study"), which stated "OHV use in the open areas does not encroach – at least very intensively – on much of the habitat of the plants [including the PMV] in relatively large portions of the open areas away from OHV staging areas." *Id.*, at p. v.

**Attempts to List the PMV as a "Threatened" Species**

29. In May 1992, USFWS issued a proposed rule for listing seven desert plants of the taxa *Astralagus* – including the PMV – as either threatened or endangered. However, the proposed rule did not indicate how many PMV plants existed in the Imperial Sand Dunes or elsewhere in the Sonoran Desert. Nor did the proposed rule refer to a plant census or any other studies that could provide such "abundance data." However, before the proposed listing became final, the Federal government issued a moratorium on all species listings, halting efforts to designate the PMV as threatened. This moratorium remained in effect until approximately 1996.

30. When the listing moratorium was lifted, USFWS restarted its efforts to list the PMV and four other milk-vetch plants as threatened or endangered. As in 1992, USFWS had no actual plant counts for the PMV. Despite requests to BLM and others for "abundance data," neither BLM nor any other source had the kind of information USFWS was looking for. Nevertheless, on October 6,

1998, USFWS issued a Final Rule designating the PMV as threatened, and identifying OHV use as the primary cause of alleged Peirson's milk-vetch population declines.

**The Center For Biological Diversity v. BLM Lawsuit – March 2000**

31. In March 2000, the Center for Biological Diversity ("CBD") filed suit against the BLM alleging that BLM had failed to consult with USFWS regarding the effects of the California Desert Conservation Area Plan ("CDCA Plan") on species that have been listed as threatened or endangered since the plan's adoption in 1980. According to CBD, this alleged failure to consult constituted a violation of Section 7 of the ESA. The lawsuit involved nearly all lands in the California Desert under BLM control, including the Imperial Sand Dunes.

32. To resolve the litigation, BLM entered into five separate stipulations, one of which related to the PMV and the dunes (the "PMV Stipulation"). Pursuant to the PMV Stipulation, BLM agreed to "temporarily" close more than 49,000 acres of the dunes to OHV use. The closure took effect on November 3, 2000 and remains in place today.

33. The new "interim" closure zones were in addition to the North Algodones Wilderness Area, where motor vehicles are strictly prohibited. The Wilderness Area consists of approximately 32,000 acres and was established in 1994 as part of the California Desert Protection Act.

**Peirson's Milk-vetch Plant Counts and Seed Bank Surveys (2001-2005)**

34. In response to BLM's decision to "temporarily" close 49,000 acres of the Imperial Sand Dunes, the ASA retained Thomas Olsen Associates ("TOA"), a biological consulting firm, and Arthur Phillips III, Ph.D., a botanist specializing in desert plants, to conduct a census of the PMV in both the open and closed areas of the dunes. Dr. Phillips and TOA issued a report on July 2, 2001, entitled, *Biology, Distribution, and Abundance of Peirson's Milkvetch and Other Special Status Plants of the Algodones Dunes, California* (the "TOA Report"), indicated that 71,926 individual PMV plants had been observed in the OHV-open area alone.

35. Although Dr. Phillips and TOA staff could not perform actual ground counts in the closed areas, they did conduct low-altitude fly-overs in a helicopter to identify PMV colonies in these portions of the dunes. According to the TOA Report, the PMV colonies in the closed areas –

as observed from the air – were similar in size, number and density to the PMV colonies in the open areas.

36. ASA then sent the TOA Report to BLM on July 9, 2001.

37. Between November 2001 and February 2005, Dr. Phillips collected additional data on the PMV. Specifically, he and his team conducted cohort studies and seed bank surveys. During this same time-period, BLM also conducted separate, independent studies of the PMV. Both sets of data — that compiled by Dr. Phillips and that compiled by BLM — strongly indicated that: (1) PMV populations are larger than previously reported, (2) PMV "expression" above ground is dependent on rainfall, not human factors, (3) the PMV seed bank is healthy and continually replenished, and (4) OHV travel patterns rarely intersect PMV colonies. Based on this information, the plaintiff decided to prepare a petition to remove the PMV from the list of threatened and endangered species.

**Plaintiffs Submit Delisting Petition (June 30, 2005)**

38. On June 30, 2005, *via* overnight mail, plaintiffs submitted to the Secretary of the Interior and USFWS a *Petition to Remove the Peirson's milk-vetch from the Federal List of Threatened and Endangered Species* (the "Delisting Petition"). On the strength of the data gathered by BLM and Dr. Phillips, the Delisting Petition argues that the original decision to list the Peirson's milk-vetch in 1998 was in error, and that recently developed data show that the plant is abundant, thriving, not seriously threatened by OHV use or other human activities, and no longer requires the protections afforded by the ESA.

39. On June 30, 2005, *via* overnight mail, the plaintiffs formally submitted the Delisting Petition to the Secretary and USFWS.

40. In response, the Service concluded that the petition contained scientific data sufficient to warrant further review, and published a 90-day finding on November 30, 2005 to that effect. 70 Fed.Reg. 71795-71799 (November 30, 2005).

41. The subsequent twelve-month finding was due in July 2006. 16 U.S.C. § 1533(b)(3)(B). Pursuant to communications with the Service, plaintiffs agreed to extend the twelve month finding

deadline to October 2006. The next 18 months passed and no finding on the Delisting Petition was made.

42. On April 8, 2008, the plaintiffs, *via* overnight mail, submitted a "60-day Notice" letter to the Secretary and USFWS, informing them that they were in violation of Section 4(b)(3)(B) of the ESA for failing to make the required finding on the Delisting Petition. The letter also notified the defendants that plaintiffs would bring suit if the alleged violations were not corrected.

43. Defendants 60-day "opportunity to cure" expired on or about June 9, 2008. As of that date, however, defendants had not made the statutorily required finding regarding plaintiff's Delisting Petition.

44. Having exhausted their administrative remedies, and having given the defendants more than ample time to comply with the requirements of Section 4(b) of the ESA, the plaintiffs are left with no recourse but to file suit in this Court for declaratory and injunctive relief.

## VI. FIRST CAUSE OF ACTION – DECLARATORY RELIEF

### (Violation of Endangered Species Act)

45. Plaintiffs herein incorporate by this reference each and every allegation set forth in paragraphs 1 through 44, inclusive, of this complaint.

46. An actual controversy exists between plaintiffs and defendants with respect to the latter's duties to make a finding regarding the Delisting Petition. Specifically, it appears that defendants do not believe that they are required to make and publish findings with respect to plaintiffs' Delisting Petition within the time-frames set forth in Section 4(b)(3) of the ESA. Plaintiffs disagree, and take the position that defendants have a non-discretionary duty to make the required findings in the time-frames described.

47. Plaintiffs seek an order from this Court stating that defendants are in fact required to issue the required findings within the statutory time-frames, and that their failure to do so in this case is arbitrary and capricious, and entitles plaintiffs to relief, including injunctive relief and reimbursement of reasonable attorneys fees, costs, and expert fees. 16 USC §1533(g)(4).

//

//

## VII. SECOND CAUSE OF ACTION – INJUNCTION

**(Order Needed to Enforce Compliance of Endangered Species Act)**

48. Plaintiffs herein incorporate by this reference each and every allegation set forth in paragraphs 1 through 47, inclusive, of this complaint.

49. Based on the facts alleged and defendants duties under Section 4(b) of the ESA, defendants have violated the Act in failing to timely respond to plaintiff's Delisting Petition.

50. In their efforts to persuade defendants to comply with the ESA, plaintiffs have exhausted every administrative remedy available to them. These efforts were unsuccessful, leaving plaintiffs with no remedy other than relief from this Court.

51. In failing to timely respond to plaintiffs' Delisting Petition, and in failing to timely make and publish mandatory findings with respect to that petition, defendants have acted in a manner that is arbitrary, capricious, and/or otherwise not in accordance with law, in violation of the ESA (16 USC §1540(g)(1)(C)) and the judicial provisions of the APA (5 USC sec. 701-706).

## VIII. PRAYER FOR RELIEF

1. FOR THE REASONS STATED ABOVE, Plaintiffs respectfully request that this Court enter judgment providing the following relief:

2. A declaratory judgment that the Secretary failed to perform a non-discretionary duty, and acted in a manner that is arbitrary, capricious, or otherwise not in accordance with law, when he failed to make the requisite findings with respect to plaintiffs' Delisting Petition within the time-frames set forth in Section 4(b)(3)(B) of the ESA; and

3. Injunctive relief requiring the Secretary to immediately make the findings required under Section 4(b)(3)(B) with respect to plaintiffs' Delisting Petition; and

4. An order awarding plaintiffs their costs of litigation, including reasonable attorneys fees, as provided by Section 11(g)(4) of the ESA (16 USC §1540(g)(4)); and

5. Any other such relief that Court deems just and proper.

RESPECTFULLY SUBMITTED this 10th day of June, 2008.

GATZKE DILLON & BALLANCE, LLP

By: [signature]

DAVID P. HUBBARD, ESQ.
Attorneys for Plaintiffs AMERICAN SAND ASSOCIATION, OFF-ROAD BUSINESS ASSOCIATION, SAN DIEGO OFF-ROAD COALITION and AMERICAN MOTORCYCLE ASSOCIATION DISTRICT 37

## TABLE OF CONTENTS OF EXHIBITS


| | Page |
|---|---|
| Exhibit 1: Notice of Intent to Sue | 1-3 |

GATZKE DILLON & BALLANCE LLP
ATTORNEYS & COUNSELORS AT LAW
EMERALD LAKE CORPORATE CENTRE
1525 FARADAY AVENUE, SUITE 150
CARLSBAD, CALIFORNIA 92008
TELEPHONE 760.431.9501
FACSIMILE 760.431.9512

OF COUNSEL
MICHAEL SCOTT GATZKE
ANTHONY T. DITTY

April 8, 2008

*By Overnight Mail*

H. Dale Hall, Director
U.S. Fish and Wildlife Service
1849 C Street N.W.
Washington D.C. 20240

Secretary Dirk Kempthorne
U.S. Department of Interior
1849 C Street N.W.
Washington D.C. 20240

Secretary Carlos M. Gutierrez
U.S. Department of Commerce
1401 Constitution Avenue, NW
Washington, DC 20230

Re: *Notice of Intent to Sue for Violations of the Endangered Species Act in Connection with the U.S. Fish and Wildlife Service's Failure to Publish Twelve-Month Determination on the Delisting of the Peirson's milk-vetch*

On behalf of The American Sand Association, the San Diego Off-Road Coalition, The Off-Road Business Association, the California Off-Road Vehicle Association and the American Motorcycle Association District 37 (collectively, " ASA *et al.*"), this letter serves to notify the U.S. Fish and Wildlife Service ("Service"), the Secretary of the Interior, and the Secretary of Commerce of their intention to file a civil action for violation of the Endangered Species Act ("ESA"). Specifically, the Service and the Secretaries of the Interior and Commerce violated section 4 of the ESA, 16 U.S.C. §1533, and its implementing regulations, by failing to issue a 12-month finding regarding ASA *et al.*'s petition to request delisting of the Peirson's milk-vetch. The citizen suit provision of the ESA requires notice be given to the Secretary and any alleged violator of a party's intent to file suit sixty days prior to the initiation of a civil action under ESA section 4. 16 U.S.C. §1540(g)(2)(A). This letter fulfills that 60-day notice requirement.

## I. THE ENDANGERED SPECIES ACT

Congress enacted the ESA to ensure the protection and conservation of threatened and endangered species. 16 U.S.C. §1531(b). To achieve this purpose, the statute requires that the Service review the "best scientific and commercial data available" in order to make determinations about the status and listing of a species. 16 U.S.C. §1533(b)(1), 1533(a)(2)(B)-(C). The statute also allows species to be removed from the federal list when they no longer require special protection, thus allowing federal resources to be spent on efforts to safeguard and recover species that are at greater risk. Upon receiving a petition to delist a species, the Service has approximately 90 days to make a finding as to whether the petition "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. §1533(b)(3)(A); 50 C.F.R. §424.14(b)(1). Twelve months after receipt of the petition to delist, the Service must determine whether: (1) listing is not warranted; (2) listing is warranted; or (3) listing is warranted but presently precluded by other pending proposals for listing species, provided other circumstances are met. 16 U.S.C. §1533(b)(3)(B). If the Service determines that listing of the species is not warranted or that a species should be delisted, it "shall promptly publish such finding in the Federal Register, together with a description and evaluation of the reasons and data on which the finding is based." 16 U.S.C. §1533(b)(3)(B). *See also, Center for Biological Diversity v. Norton*, 254 F.3d 833, 840 (9th Cir. 2001) ("In order to 'force action on listing and delisting proposals,' . . .Congress amended the ESA's petition process expressly to provide certain mandatory deadlines by which the Secretary must act on a petition.").

## II. VIOLATION OF THE ENDANGERED SPECIES ACT

On June 30, 2005, ASA *et al.* submitted a formal petition to remove the Peirson's milk-vetch (Astragalus magdalenae var. peirsonii) from the federal list of threatened and endangered species, pursuant to Section 4(b)(3) of the Endangered Species Act (16 U.S.C. § 1533(b)(3)) and Title 5, Section 553(e) of Administrative Procedures Act. The petition provided detailed scientific data supporting the determination that Peirson's milk-vetch has a stable, viable population that is not threatened with extinction, including evidence that: (1) the Peirson's milk-vetch has a large seed bank containing as many as 5.6 million seeds, (2) the above-ground expression of Peirson's milk-vetch fluctuates according to climate conditions, and (3) during rainy years such as 2001 and 2004, the Peirson's milk-vetch will germinate profusely, producing as many as 286,000 plants.

In response, the Service concluded that the petition contained scientific data sufficient to warrant further review, and published a 90-day finding on November 30, 2005 to that effect. 70 Fed.Reg. 71795-71799 (November 30, 2005). The subsequent twelve-month finding was due in July 2006. 16 U.S.C. §1533(b)(3)(B). Pursuant to communications with the Service, ASA *et al.* agreed to extend the twelve month finding deadline to October 2006.

As of April 2008, the twelve month finding has still not been published, and is now 18-months delinquent in light of the extended deadline of October 2006. Therefore, the Service is currently in violation of the ESA, 16 U.S.C. §1533. Accordingly, we request that the Service immediately remedy its ESA violation by promptly publishing the twelve-month finding on the potential delisting of the Peirson's milk-vetch.

Pursuant to the citizen suit provision of the ESA, the Secretary's failure to meet the requirements of section 4 is a non-discretionary act or duty as defined by section 11(g). 16 U.S.C. §1533(g)(1)(C). If the Service does not initiate consultation before the end of this 60-day notice period, ASA *et al.* intends to file a civil action to correct this violation, seeking injunctive and declaratory relief, as well as legal fees and cost regarding these violations. ASA *et al.* may be contacted through their counsel at the following address:

David Hubbard
Gatzke Dillon & Ballance LLP
1525 Faraday Avenue, Suite 150
Carlsbad, California 92008

Please contact us if you have any questions or wish to discuss this matter further.

Very truly yours,

David P. Hubbard
of
Gatzke Dillon & Ballance LLP

DPH/rlf

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

FILED

**I. (a) PLAINTIFFS**

American Sand Assn.; Off-Road Business Assn.; San Diego Off-Road Coalition; and American Motorcycle Assn. District 37

(b) County of Residence of First Listed Plaintiff San Bernardino
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)

Gatzke Dillon & Ballance LLP 1525 Faraday Avenue, Suite 150
(760) 431-9501 Carlsbad, CA 92008

**DEFENDANTS**

United States Fish and Wildlife Service; Dirk Kempthorne, Secretary of the Interior; U.S. Department of the Interior

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

BY: DEPUTY

Attorneys (If Known) '08 CV 1034 H JMA

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☒ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
Endangered Species Act, 16 U.S.C. §§1533, 1540(g)

Brief description of cause:
Defendants failed to issue a 12-month finding re petition to request delisting of the Peirson's milk-vetch

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 **DEMAND $** CHECK YES only if demanded in complaint: **JURY DEMAND:** ☐ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE DOCKET NUMBER

DATE 06/10/2008 SIGNATURE OF ATTORNEY OF RECORD [signature]

**FOR OFFICE USE ONLY**

RECEIPT # 151862 AMOUNT $350— APPLYING IFP JUDGE MAG. JUDGE

PB 06/10/08

CR

**UNITED STATES**
**DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 151802 - MB**

**June 10, 2008**
**14:00:09**

**Civ Fil Non-Pris**
USAO #.: 08CV1034 CIVIL FILING
Judge..: MARILYN L HUFF
Amount.: $350.00 CK
Check#.: BC5192

**Total-> $350.00**

FROM: AMERICAN SAND ASSN; OFF-ROAD
BUSINESS ASSN, ET AL VS
US FISH & WILDLIFE SERVICE, ET